IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0314
════════════
 
In re the Honorable Errlinda 
Castillo, Justice, 
The Court of Appeals for the 
Thirteenth District of Texas, in her Official Capacity, Relator
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus and 
Prohibition
════════════════════════════════════════════════════
 
Chief Justice Jefferson delivered the 
opinion of the Court.
In this 
original proceeding, Justice Errlinda Castillo of the Thirteenth Court of 
Appeals seeks writs of mandamus and prohibition ordering the Thirteenth Court to 
vacate an exit plan devised for her by the other justices of that court after 
Justice Castillo lost her reelection bid. We deny the petitions.
In November 
2000, Justice Castillo was elected as a justice of the Thirteenth Court of 
Appeals for a term running from January 1, 2001 through December 31, 2006. 
Although she sought election to a second term, she lost her reelection bid to a 
challenger in the Democratic Party primary on March 7, 2006. Shortly thereafter, 
on April 6, 2006, the Thirteenth Court held a judges’ meeting which Justice 
Castillo did not attend. In her absence, the court decided that, after May 31, 
2006, Justice Castillo would not be assigned to the court’s panels[1] to hear appeals; instead, a visiting 
judge would sit in her place. As a result, Justice Castillo would not receive 
initial writing responsibility for opinions in appeals heard by the Thirteenth 
Court. Rather, she would be assigned to original proceedings, with other members 
of the court rotating on the original proceedings panel with her. Justice 
Castillo would also act as the motions judge between June and the end of her 
term.
Justice 
Castillo filed a petition seeking writs of mandamus and prohibition, asking that 
we: (1) prohibit the Thirteenth Court from excluding her from case assignments 
after May 31, 2006; (2) order the court to permit her to draw for panel and 
writing assignments; and (3) prohibit the court from assigning a visiting judge 
in her place. She argued that the exit plan infringed on her right to complete 
her term as justice on the court of appeals and, in doing so, violated the Texas 
Constitution, state statutes, and the court of appeals’ administrative 
rules.
 After 
Justice Castillo filed her petition, the Thirteenth Court held another meeting, 
this one attended by Justice Castillo. At this May 3 meeting, the court 
rescinded the April 6 plan and implemented a modified exit plan.[2] Under the modified plan, Justice 
Castillo would participate in the draw for panel assignments for the summer and 
fall terms and would be eligible to draw for majority-opinion assignments for 
the summer term. The court withdrew its request for the assignment of a visiting 
judge to serve in Justice Castillo’s place. Beginning in the fall term, however, 
neither Justice Castillo nor Justice Hinojosa[3] would be assigned initial 
responsibility for drafting majority opinions. According to the Thirteenth 
Court, Justice Castillo’s exclusion was necessary because she was allegedly 
thirty-eight cases behind on her work. Justice Castillo hotly disputed this 
contention, noting that the thirty-eight matters assigned to her are a “docket 
of current cases.” Justice Castillo asserted that, as of June 2, 2006, she had a 
docket of no more than eleven current cases that she expected to “zero out” by 
August 31, 2006. 
As additional 
support for the modified plan, the court observed that Justice Castillo’s 
remaining tenure on the court involved significantly less time than the 
approximately seven months it normally takes the court to issue an opinion in a 
civil case. Nonetheless, the court decided that if Justice Castillo completed 
her work by the end of the summer term on August 31, she would be assigned more 
work on an ad hoc basis. The court then drew for panel assignments for the 
summer and fall terms and Justice Castillo was randomly assigned to Panel B for 
the summer term and Panel A for the fall.[4]
After 
modifying the exit plan, the Thirteenth Court moved to dismiss Justice 
Castillo’s petition without prejudice, contending, among other things, that she 
could not establish that the new plan violated any constitutional provision, 
statute, or administrative rule. Justice Castillo then filed a supplemental 
petition for writ of prohibition, asking us to prohibit the Thirteenth Court 
from (1) suspending its established internal administrative rules; (2) 
eliminating her from case assignments and writing assignments after September 1 
and assigning cases and opinions on an ad hoc basis; and (3) “otherwise 
interfering with [Justice Castillo’s] exercise of her constitutional rights and 
powers.” 
This Court 
has a constitutional obligation to supervise and administer the judicial branch. 
Tex. Const. art. V, §§ 3, 31. 
Pursuant to this obligation, we “have supervisory and administrative control 
over the judicial branch and [are] responsible for the orderly and efficient 
administration of justice.” Tex. Gov’t 
Code § 74.021. We also have inherent power to protect and preserve the 
proper administration of the judicial system. Vondy v. Comm’ns Court of 
Uvalde County, 620 S.W.2d 104, 109 (Tex. 1981). In this role, we may issue 
writs to compel courts of appeals to perform non-discretionary acts when the law 
so requires. Tex. Gov’t Code § 
22.002; see O’Connor v. First Court of Appeals, 837 S.W.2d 94, 95 (Tex. 
1992)(conditionally granting writ of mandamus to allow an appellate court 
justice to file a dissent from the denial of a motion for en banc 
consideration). 
The actions 
taken at the May 3 judges’ meeting, and the resulting exit plan, moot many of 
Justice Castillo’s original complaints. The Thirteenth Court now correctly 
agrees that Justice Castillo, like every other justice on the court, may vote on 
cases heard by her panel; draft concurring or dissenting opinions in any cause 
in which she participated in the decision; vote on motions for rehearing; 
participate in oral argument; participate in original proceedings and motions; 
and discuss cases with her fellow justices. The court also concedes, 
appropriately, that Justice Castillo is entitled to write proposed majority 
opinions which, if joined by another justice, would become the opinion of the 
court. 
The modified 
plan does, however, alter Justice Castillo’s role on the court in that she has 
been excluded from the initial majority-opinion assignment draw for the fall 
term. Justice Castillo contends, therefore, that the modified exit plan violates 
article V, section 6 of the Texas Constitution, which establishes courts of 
appeals and authorizes them to “sit in sections as authorized by law.” Tex. Const. art. V, § 6. In addition, 
Justice Castillo asserts that the modified exit plan contravenes section 
22.222(b) of the Government Code, which provides: 
 
If more 
than one panel is used, the court of appeals shall establish rules to 
periodically rotate the justices among the panels. Permanent civil panels and 
criminal panels without rotation may not be established. 
 
 
Tex. Gov’t Code § 22.222(b). While 
these provisions themselves do not grant Justice Castillo the right to be 
included in the majority-opinion assignment draw, she urges that when combined 
with the Thirteenth Court’s administrative rules, her entitlement to be assigned 
majority opinions becomes clear. 
Administrative Rule 4 provides, 
in relevant part, that:
 
Panels 
will be chosen so that the memberships will be known for two three month terms, 
i.e., the current term and the next. At the beginning of each term, the Justices 
will draw for membership on the panels for the next term. 
 
Cases 
shall be assigned to the panels as set forth in Rule 6.
 
 
Administrative 
Rule 6(B) provides, in relevant part:
 
All 
Justices, without exception, shall . . . randomly draw for panel membership. 
After panel membership is so chosen, seniority on the panel shall be determined. 
The Justices shall then randomly draw writing assignments.
 
 
We disagree 
that these rules establish a right for a justice to be assigned initial drafting 
responsibility for majority opinions. While Rule 6 provides that “Justices” will 
randomly draw writing assignments, the rule neither states that “all Justices” 
shall draw[5] nor that its provisions may not be 
temporarily suspended. It appears, in fact, that the rules themselves 
contemplate just such a suspension. See 13th Court Administrative Rule 24 
(providing that “[b]y majority vote of the Court en banc, these rules may 
be amended or temporarily suspended”). The Thirteenth Court employed this 
practice at the May 3 meeting. Although the modified plan itself may not be the 
most prudent model for a court endeavoring to clear its docket, we conclude that 
the court acted within its discretion in adopting it. 
       
Both state 
and federal appellate courts engage in a variety of practices for assigning 
cases and managing their dockets. Some assign cases randomly, others by 
seniority, still others by assignment of the chief justice. See, e.g., 
Melinda Gann Hall, Opinion Assignment Procedures and Conference Practices in 
State Supreme Courts, 73 Judicature 209, 210-11 (1990); Sandra 
Day O’Connor, Remembering Rehnquist, 31 Journal of Supreme Court History 5, 7 
(2006). Courts must have some leeway in making such assignments to help maintain 
a current docket. Whether we deem the modified plan at issue here advisable or 
not, we must leave it to the Thirteenth Court to determine whether such a plan 
will maximize efficiency when faced with one (and possibly two) outgoing 
justices during the last few months of their terms. While there may be 
circumstances in which a court’s suspension of its internal rules constitutes a 
clear abuse of discretion, it does not appear, under the circumstances presented 
here, that the Thirteenth Court clearly abused its discretion or refused to 
perform a non-discretionary duty. See In re Yates, 960 S.W.2d 652, 652 
(Tex. 1997); O’Connor, 837 S.W.2d at 97. The constellation of 
constitutional, statutory, and administrative provisions on which Justice 
Castillo relies does not create a right to participate in the majority-opinion 
draw and cannot support her claim for extraordinary relief. 
It is not 
uncommon for justices on a collegial court to harbor differences of opinion on 
administrative or substantive matters. Proceedings like these are rare but may 
occasionally be necessary to ensure that a justice is able to perform the duties 
appertaining to the office. See O’Connor, 837 S.W.2d at 97. We express no 
opinion on the validity of Justice Castillo’s challenge to the original plan, 
which presented separate issues about the role of a justice on an appellate 
court. In this case, however, the court withdrew its previous plan, and we find 
the substitute to be within the court’s discretion. The petition for writs of 
mandamus and prohibition and the supplemental petition for writ of prohibition 
are denied. Tex. R. App. P. 
52.8(a).
 
______________________________
 
Wallace B. 
Jefferson
Chief Justice 

 
OPINION 
DELIVERED:     August 31, 
2006           
 
 
 







[1] The Thirteenth Court is composed of six justices, each 
of whom rotates among two randomly assigned, three-member panels. 


[2] While the Court voted in favor of this action, Justice 
Castillo, on the advice of counsel, stated that she would abstain from voting to 
preserve this Court’s jurisdiction over this original proceeding. 


[3] Justice Hinojosa faces an opponent in the November 
election. 

[4] The panel assignments are:
 
Summer Term
Panel A: Justices Hinojosa, Rodriguez, and 
Garza
Panel B: Chief Justice Valdez and Justices Yanez and 
Castillo
 
Fall Term
Panel A: Chief Justice Valdez and Justices Hinojosa and 
Castillo 
Panel B: Justices Yanez, Rodriguez, and 
Garza

[5] By contrast, other portions of Rule 6 specify “all 
justices.” See 13th Court Administrative Rule 6 (“All Justices, without exception, shall . . . randomly draw for panel membership.”) 
(emphasis added)