# NO. 12-18-00355-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *THERESA LYNN GODDARD,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

Theresa Lynn Goddard filed this original proceeding to challenge Respondent's order vacating a temporary protective order.[1]   We conditionally grant the writ.

## BACKGROUND

The mandamus record indicates that the temporary protective order at issue arises out of a pending divorce proceeding and suit affecting the parent child relationship.  The record further indicates that Theresa and Real Party in Interest, James Albert Goddard, are the parents to one child, B.L.G.

On February 23, 2017, Respondent signed a temporary ex parte protective order against James.  Respondent found that (1) a clear and present danger of family violence existed unless James was ordered to do or refrain from doing certain acts, and (2) there is an immediate need for a protective order to prevent family violence and to protect Theresa and B.L.G.  The order numerated sixteen acts prohibiting certain actions by James, was effective for twenty days, and set a hearing for March 1, 2017.  On March 1, the parties filed a Rule 11 agreement in which they agreed to reschedule the March 1 hearing and that the temporary protective order would "remain in force until the Court is able to hear the evidence."  On April 7, Respondent signed an order

---

[1] Respondent is the Honorable Jeff Fletcher, Judge of the 402nd District Court in Wood County, Texas.

extending the temporary protective order and stating that the order "will remain in force until the Court hears the evidence on this matter."

At a status hearing on November 7, 2018, James's counsel indicated to Respondent that he had a proposed divorce decree, but no one mentioned the protective order. On November 8, Respondent signed a sua sponte order vacating the temporary protective order and stating that "no protective order exists in this case." In an email to the parties' counsel, among others, Respondent stated the following:

> I have recently received numerous questions from law enforcement regarding a protective order in the above matter. I have taken the liberty to copy them as they have been forced to endure numerous illicit telephone calls and complaints regarding same to be certain that all persons involved or affected by this conduct have a clear understanding of the position taken by the Court in this matter. In researching this problem, I find that in August 2016 a Temporary Ex Parte Protective Order was signed that was only valid for twenty days. In November of 2016, *another* Ex Parte Protective Order was issued.[2] Since that time, **no actual protective order has ever issued** and there have been five (5) more hearings/opportunities to present evidence regarding this subject. It appears that the most recent extension requested and signed in February 2017 was drafted by counsel that allowed the Temporary Ex Parte Protective Order to remain in effect "…*until the Court is able to hear the evidence*…". This runs counter to Texas law and common sense. Attorneys cannot draft and agree to orders that do not comply with Texas law under Rule 11 of the Texas Rules of Civil Procedure. Even if the order had actually been issued based on credible evidence, Protective Orders are only good for two years without extenuating circumstances that certainly do not exist in this case. It has become **glaringly apparent** that the feckless Temporary Ex Parte Protective Order has been weaponized by Ms. Goddard in her effort to have Mr. Goddard incarcerated for violation of the order. Ms. Goddard has contacted the WCSO countless times and has even recently complained to the Texas Rangers that the WCSO had failed to enforce the order. Ms. Goddard even has called law enforcement *twice this week* notwithstanding the fact that the most recent hearing in this case was yesterday. There were at least seven opportunities for the Court to "hear the evidence" and *no evidence* of the need for a Protective Order *has ever been produced*. I have attached an order issued sua sponte that VACATES the most recent Temporary Ex Parte Protective Order that was signed *almost two years ago*. Plainly put, THERE IS NO PROTECTIVE ORDER IN THIS CASE. Further abuse of the rules and weaponization of the law pertaining to the application for protective orders without valid evidence properly presented will result in very uncomfortable consequences.

This proceeding followed, and this Court granted Theresa's request for a stay of Respondent's November 8 order.

## PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy. ***In re Sw. Bell Tel. Co., L.P.***, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. ***In re Cerberus***

---

[2] The record before us does not include any 2016 orders.

2

*Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator has the burden of establishing both of these prerequisites. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding.). "Mandamus will not issue when the law provides another plain, adequate, and complete remedy." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding).

"[A] protective order rendered during the pendency of the parties' divorce is not a final judgment for purposes of appeal." *Bilyeu v. Bilyeu,* 86 S.W.3d 278, 282 (Tex. App.—Austin 2002, no pet.); *see In re K.S.L.-C.,* 109 S.W.3d 577, 579–80 (Tex. App.—Tyler 2003, no pet.). Additionally, "[b]ecause a trial court's temporary orders in a custody case are not appealable, mandamus is an appropriate means to challenge them." *In re McPeak*, 525 S.W.3d 310, 313 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). Accordingly, mandamus review is appropriate in this case. *See id*.; *see also Bilyeu*, 86 S.W.3d at 282; *House v. House*, No. 01-10-00299-CV, 2010 WL 2723188, at *1 (Tex. App.—Houston [1st Dist.] July 8, 2010, no pet.).

## AVAILABILITY OF MANDAMUS

In her petition for writ of mandamus, Theresa contends that Respondent abused his discretion by vacating the temporary protective order without affording notice and a hearing, which placed her safety at risk, and when the parties had reached a Rule 11 agreement extending the order, which Respondent previously approved. She contends that Respondent's failure to hold a hearing violates both the family code and due process.

## Applicable Law

If a trial court finds from the information contained in an application for a protective order that there is a clear and present danger of family violence, the trial court may, without further notice to the individual alleged to have committed family violence and without a hearing, enter a temporary ex parte order for the protection of the applicant or any other member of the family or household of the applicant. TEX. FAM. CODE ANN. § 83.001(a) (West 2014). The order may direct a respondent to do or refrain from doing specified acts. *Id*. § 83.001(b). The order is valid for the period specified in the order, not to exceed 20 days, but on the request of an applicant or on the court's own motion, a temporary ex parte order may be extended for additional 20-day periods. *Id*. § 83.002 (West 2014). An individual affected by a temporary ex parte order may file a motion at any time to vacate the order. *Id*. § 83.004 (West 2014). On the filing of the motion to vacate, the court shall set a date for hearing the motion as soon as possible. *Id*.

3

**Analysis**

This case presents a unique scenario, in that the parties reached a Rule 11 agreement that extended the temporary ex parte protective order until Respondent could hear the evidence. Under Rule 11, "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Here, the Rule 11 agreement is signed by counsel for each party, was filed with the Wood County District Clerk, and states that (1) an ex parte protective order has been granted in this matter; (2) the hearing scheduled for March 1, 2017 is subject to conflict of schedules, and (3) "the undersigned counsel agree that the hearing will be re-scheduled. AND THAT the temporary ex-parte order will be extended as necessary to remain in force until the Court is able to hear the evidence." Accordingly, the agreement complies with the requirements of Rule 11. *See id*. Notably, Respondent signed an order acknowledging the agreement and extending the temporary protective order in accordance with the agreement.

With respect to duration of the temporary protective order, Section 83.002 states that such orders are valid for twenty days, but may be extended for additional 20-day periods.[3] *See* TEX. FAM. CODE ANN. § 83.002. Section 83.002 does not address whether parties may extend the duration beyond twenty days by agreement.[4] *See id*. However, the public policy of this State (1) favors the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, and (2) seeks to provide a safe, stable, and nonviolent environment for the child. *See* TEX. FAM. CODE ANN. §§ 15.001, 153.001(a)(2) (West 2014); ***In re Lee***, 411 S.W.3d 445, 449-450 (Tex. 2013) (orig. proceeding) (children suffer needlessly from traditional litigation; thus, the amicable resolution of child-related disputes should be promoted forcefully). As previously noted, the parties in this case share a child and the agreed temporary order is for the protection of both Theresa and the child. Given the public policy of this state, we cannot conclude that the parties were prohibited from reaching a Rule 11 agreement extending the temporary protective order until evidence could be heard.

---

[3] A regular protective order is generally valid for two years but may exceed two years under certain circumstances. TEX. FAM. CODE ANN. § 85.025 (West Supp. 2018).

[4] Chapter 85 of the family code, which addresses regular protective orders, contemplates agreed protective orders to facilitate settlement. *Id*. § 85.005 (West 2014).

4

Moreover, the record does not indicate that James, whose conduct was the reason for and the subject of the temporary protective order, ever objected to continuation of the order or sought to have the order vacated.[5] The family code contemplates the setting aside of a temporary ex parte protective order on the filing of a motion by one affected by the order and after a hearing. TEX. FAM. CODE ANN. § 83.004. In this case, no one affected by the order filed a motion to vacate. Chapter 83, which governs temporary ex parte orders, contains no express language either permitting or prohibiting the sua sponte setting aside of a temporary protective order. *See id*. §§ 83.001-.006 (West 2014). Assuming Respondent's inherent authority allowed him to sua sponte vacate the order, Section 83.004 would appear to require a hearing before vacating a temporary protective order. *See id*. § 83.004; *see also **Rymer v. Lewis***, 206 S.W.3d 732, 736 (Tex. App.—Dallas 2006, no pet.) (trial courts possess inherent power to control the disposition of their cases). Furthermore, the code of judicial conduct requires a judge to "accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law." TEX. CODE JUD. CONDUCT, Canon 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G App. B (West 2013).

Two additional reasons lead us to conclude that Respondent should have afforded the parties notice and an opportunity to be heard before vacating the temporary protective order. First, due process demands a neutral and detached hearing body or officer. ***In re G.L.S.***, No. 12-06-00315-CV, 2007 WL 3087685, at *10 (Tex. App.—Tyler Oct. 24, 2007, no pet.) (mem. op.). Public policy demands that a trial judge act with absolute impartiality and appear to be impartial so that no doubts or suspicions exist as to the fairness or integrity of the court. ***Rymer***, 206 S.W.3d at 736; *see **In Interest of M.L.H.,*** No. 02-01-00025-CV, 2002 WL 35628727, at *11 (Tex. App.—Fort Worth Mar. 21, 2002, no pet.) (op.) ("[j]udicial decisions rendered under circumstances that suggest bias, prejudice or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and thwart the principles on which the judicial system rests"); TEX. CODE JUD. CONDUCT, Canon 3(B)(4)-(5) ("[a] judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity…" and "shall perform judicial duties without bias or prejudice"). A trial judge should not act either as a party's advocate or a party's adversary. ***Rymer***, 206 S.W.3d at 736. Here, Theresa expresses concern

---

[5] Nor did James file a response to Theresa's petition for writ of mandamus.

regarding Respondent's communications with third parties, perceives his email as questioning both her integrity and that of her counsel, classifies portions of his email as an attempt to force her to change her position, and asserts that the email creates a chilling effect as to her access to the court and reflects bias and prejudice. Giving the parties notice and an opportunity to be heard before vacating the temporary protective order could have avoided any appearance of impartiality.

Second, and most importantly, the underlying proceeding involves the safety and welfare of a child. Again, the public policy of Texas is to provide a safe, stable, and nonviolent environment for the child. *See* TEX. FAM. CODE ANN. § 153.001(a)(2). The child's best interest shall *always* be the primary consideration in determining issues of conservatorship, possession of, and access to the child. *Id.* § 153.002 (West 2014); *see **Messier v. Messier***, 389 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that best interests of child are paramount concern in custody cases); ***In re Vernor***, 94 S.W.3d 201, 211 (Tex. App.—Austin 2002, orig. proceeding) (temporary orders must consider the best interest of the child). Thus, when deciding whether to vacate the temporary protective order, B.L.G.'s best interests should have been Respondent's primary consideration. *See* TEX. FAM. CODE ANN. § 153.002; *see also **Messier***, 389 S.W.3d at 907; ***Vernor***, 94 S.W.3d at 210. Neither Respondent's order nor his email address whether vacating the temporary order was in the child's best interests. Rather, the tone and verbiage of the email suggests that Respondent based his decision on considerations other than the best interests of the child. *See **Vernor***, 94 S.W.3d at 211 ("court's order seemed to reflect its anger with the mother rather than appropriate concern for the best interest of the child"). Respondent's decision to vacate the temporary protective order, which was issued for the child's protection as well as that of her mother, without notice and an opportunity to be heard, potentially placed the child's safety and welfare at risk.

Accordingly, for the above reasons, we conclude that Respondent abused his discretion by vacating the temporary protective order to which the parties had agreed, without first affording the parties notice and an opportunity to be heard.

## DISPOSITION

Having determined that Respondent abused his discretion by vacating the temporary protective order, we ***conditionally grant*** Theresa's petition for writ of mandamus and direct Respondent to vacate his November 8 order setting aside the agreed temporary protective order. We trust that Respondent will promptly comply with this opinion and order. The writ will issue

6

only if Respondent fails to do so *within ten days after the date of the opinion and order*. Respondent shall furnish this Court, within the time for compliance with this Court's opinion and order, a certified copy of his order evidencing compliance.  We lift our stay ordered on December 21, 2018.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 6, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 6, 2019**

**NO. 12-18-00355-CV**

**THERESA LYNN GODDARD,**
Relator
V.

**HON. JEFF FLETCHER,**
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by Theresa Lynn Goddard; who is the relator in Cause No. 12-18-00355-CV and applicant in trial court cause number 2016-212, pending in the 402nd District Court of Wood County, Texas. Said petition for writ of mandamus having been filed herein on December 21, 2018, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, ***conditionally granted***. The stay ordered on December 21, 2018 is lifted.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his order of November 8, 2018; the writ will not issue unless the HONORABLE JEFF FLETCHER fails to comply with this Court's order within ten (10) days from the date of this order.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*